Mr. Moytez-Pineda's conviction should be reversed because he was merely a passenger in a vehicle and there is utterly no evidence of his dominion and control over the drugs that were in the car. And this court has repeatedly held that where someone is a passenger and there is no evidence of dominion and control, even where that passenger must be aware of the drugs, that is insufficient evidence to support a conviction. The two cases that are directly on point are United States v. Sanchez-Mata and United States v. Ramirez. And you would concede you can't limit this to direct evidence. We have to consider circumstantial evidence as well. We do consider circumstantial evidence, but as this court said in United States v. Ordino-Aguilera, circumstantial evidence and reasonable inferences therefrom do not relieve the government of their obligation to present evidence beyond a reasonable doubt. And that case was a Rule 29 that was granted on appeal, or the denial was reversed on appeal, I should say. But in any event, Sanchez-Mata and Ramirez are indistinguishable from Mr. Moytez-Pineda's case. In Sanchez-Mata, there is somewhat of a distinction, isn't there, in the facts of this case, with the context of the suspicious entry of the vehicle into the U.S., apparently not used to smuggle illegal aliens, and the large amount of marijuana that was in the vehicle visible to the agent. Don't these kind of distinguish both Ramirez and Sanchez-Mata? Actually, Your Honor, they don't inform the analysis. First of all, in Sanchez-Mata, the car, the Audi that Sanchez-Mata was a passenger in was traveling 95 miles per hour. There had been an ongoing investigation and surveillance into a narcotics conspiracy. There was another car that was involved. There were other defendants in the case from the same, from the arrest of the red Toyota that was related to the Audi. So it's very similar. Well, in Sanchez, the dope was in the trunk, in a duffel bag in the trunk, right? Yes. And here, the dope was here in the passenger compartment, and he's practically sitting on top of it. Well, it wasn't exactly in the passenger compartment. It was an SUV, so there was no trunk, per se. It was in the back portion of the SUV. There's a piece of cardboard separating the... Correct. And certainly, I'm going to concede there was sufficient evidence that Mr. Muentes had knowledge. But the issue here is... Well, because you've got the smell of marijuana, too. You've got the dark windows. You've got testimony, expert testimony from the officers about some surveillance about other vehicles that are circling around when the vehicle comes in. And you have testimony about the particular area and the criminal activity that it's known for, right? Well, it's not expert testimony. There was testimony from the agents as to the fact that alien smuggling takes place in this region, which is important, that also people try to illegally enter the United States in this region, which is also important. But again, what I'm getting at is... What do they say about drug dealing in that area? Well, drug dealing takes place there, too. But that's... What I'm getting at is with respect to the knowledge of the marijuana, it is no different than Sanchez-Mata, because in that case, the courts expressly held that the defendant must have had knowledge based on his nervousness, the overwhelming odor, and his prior conviction for drug dealing. And nonetheless, there was no evidence of dominion and control. Ramirez was the same. Based on Ramirez's nervousness, the court deemed that he had knowledge, and nonetheless said there's no evidence of dominion and control. What significance should we attach to the fact that there were no personal belongings of Moitis Pineda in the car? Absolutely none. There is no burden... Doesn't that suggest that he wasn't hitchhiking or trying to get into the United States illegally? Well, it's not his burden to present... I didn't say it's his burden, but that fact is in evidence. What can we deduce from that? Well, I don't think we can deduce anything from that, because it doesn't show dominion and control over the marijuana. But to the extent that we're going to... Again, I think that it's not really incumbent upon Mr. Moitis to hypothesize as to possible innocent explanations, but to the extent that we do that, the case agent in this case testified, first of all, that his initial reaction was he suspected alien smuggling, narcotics trafficking, or both. In other words, this could have been a combination load. And the point of that being that Mr. Moitis Pineda could have just as easily been cargo as he was involved in the drug smuggling. There's no evidence of that, though. Well, right. But the agent did testify that he suspected alien smuggling. And that's why he stopped them, right? Right. But what I'm getting at is Mr. Moitis was an undocumented alien. There is no evidence that he had dominion and control over the marijuana. He could just as easily have been human cargo. So by innocent explanation, I'm not saying innocent of any crime. I'm saying innocent of involvement in narcotics trafficking. Well, and that he could have been acquitted, and I'm sure that you argued that, but he wasn't. So if the circumstantial evidence is subject to another interpretation, then do you still win? There is no circumstantial evidence of dominion and control here. There's absolutely none. As far as the other vehicles that were involved in the other surveillance, that is just like Sanchez Mata. And it's also like another, I think it was United States v. Thomas, a case from 1972 where there were two vehicles involved in an apprehension at the border. There was suspicious activity, undeniably. But that does not, that goes to the driver, not the passenger. That does not impute dominion and control to Mr. Sanchez Mata. I'm sorry to Mr. Moitis Pineda. And again, in the Ramirez case, Ramirez was again a passenger in the vehicle, again deemed by this court to have knowledge of the drugs. There were no drugs on his person, just like Mr. Moitis. There was no cash on his person, just like Mr. Moitis. He did not resist or attempt to flee, just like Mr. Moitis. And he had utterly no connection to the vehicle, just like Mr. Moitis. Well, for sake of argument right now, if we disagree with you and we find sufficient evidence for the conviction for possession of intent to distribute, do you concede that there is also sufficient evidence for the importation count? It's the same analysis. But I think that if your honors do find that there is sufficient evidence, I think you overrule Sanchez Mata and I think you overrule Ramirez. And I see that I have about three and a half minutes left. Would you like to save that for rebuttal? Yes, please. Thanks, Mr. Lehman. Good morning. Good morning, your honors. May it please the court, Lawrence Kasper for the appellee of the United States in this case. Your honors, you've just heard Moitis' counsel tell you essentially that the fact that there are 512 pounds of raw marijuana sitting with his client in the passenger compartment of the SUV should not be significant. Well, let me ask you this, just I think to jump right into it. That obviously we have to deal with our Ninth Circuit precedent. And, you know, absent the Ninth Circuit precedent, it would be, it's an easier case. I mean, I think that arguably a lot of the Ninth Circuit precedent where they say that there's not sufficient evidence, I think you could put that in front of 100 juries and they would still find that there was. But we still have to deal with our precedent. So tell us why this is distinguishable. What do we have in this case that, you know, would distinguish it from those cases where the Ninth Circuit previously found there wasn't sufficient evidence? Certainly, your honor. The facts here are vastly different from the real presence cases that this court has previously decided. Here we have ample evidence of the rational trier of fact to find possession beyond a reasonable doubt. We have 20 bales or 500 pounds of marijuana stacked in the passenger compartment just behind Moites' front passenger seat. We have an SUV making a stealthy entry, traversing roadless and isolated sand dunes to illegally enter the United States with a load of marijuana. We have blackened windows which were spray painted. We have marijuana in plain view of Mr. Moites. And, in fact, the agent could immediately see the bales through a gap in the cardboard. So far you've told us everything that proves he knew it was there. He concedes he knew it was there. What do you have to show that it was under his dominion and control? Well, your honor, we have two cell phones that were found to match the two vehicle occupants. In addition to dominion and control, your honor, constructive possession has been shown by showing that this is a joint venture. And, your honor, clearly here the facts support that this was a joint venture. What's the cell phone? I didn't catch what you were saying about the cell phone. There were two cell phones in the vehicle to match the two occupants. What does that prove? Well, your honor, that does indicate with the activity a reasonable inference could be drawn by the members of the jury that with the two individuals in the vehicle, with the cell phones, with the various scouting activity going on, that there were communications. Because he had a cell phone? Yes, your honor. But, in addition to that, your honor. A lot of people who have cell phones, you know. Your honor, I recognize that. And that is by no means the strongest evidence here. In fact, each of the cases that appellant relies upon, for example, Sanchez-Mata involved duffel bags in the trunk. Ramirez was a spare tire case. Esquivel-Ortega was a bumper compartment. These are cases where the drugs are hidden. This court has given great weight where the drugs are in plain view, are in close proximity to the defendant. Here, he could reach out, reach behind him, touch them, move them, obviously, with 500 pounds of marijuana. I urge the court to take a look at the Magallan-Jimenez case, which addresses this issue, where there was a box at the feet of the defendant. Yes, he moved the box, or the box was at his feet. But here, we have 500 pounds of marijuana. Was there any testimony in the trial about, because of the amount of marijuana that it would be, that it would generally be a joint venture with more than one person because of having to move it, load it, all of that sort of stuff? There was not testimony to that effect. Certainly, that inference could be drawn by the jury. In addition, your honors, no reasonable smuggler is going to take an individual as a witness on this venture. This individual would, with 500 pounds of marijuana, be able to identify the driver, would be able to essentially out the entire operation. These smugglers took ample precautions throughout their smuggling effort to ensure that that was not the case. They had three cars circling the highway to ensure that stealth was maintained. They had a, on the sand dunes, they had an ATV rider to ensure that stealth was maintained. Why would they possibly put a witness in the car who was capable of identifying the driver, potentially identifying others involved with the smuggling effort? Your honors, reasonable- What about the, Judge Silverman mentioned that the defendant didn't have any, like, clothing or anything that would indicate that he was a hitchhiker. What, how would you argue the significance of that? Well, your honors, the courts have held that where there's an innocent explanation for a defendant's conduct, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the explanation suggesting the defendant engaged in wrongdoing is, in fact, the correct one. And here, that's precisely what occurred. Each of these pieces of evidence goes to show that the, this was not an innocent hitchhiker, quote, unquote, innocent hitchhiker who got in the vehicle. There was no backpack. There was no change of clothes for Moites. There was not even a jacket for Moites. There was no money for Moites. There was no drinking water in the vehicle. And, in fact- Was the defendant's theory of trial based on his testimony or based on counsel speculating why he could have been there? And it is precisely based on counsel's speculation. Of course, reasonable doubt cannot be based on speculation. Did they, did they offer any evidence in their case in chief? I believe the only evidence that was offered was a stipulation between the parties that was introduced by counsel at the time of trial. What did they stipulate? The stipulation went to the issues of the quantity of drugs in the vehicle and, and so forth. It had nothing to do with the, the possession issue specifically. And, in fact, your honors, this, this was plainly a joint venture set up for no purpose other than marijuana smuggling, a marijuana mobile, if you will. The district judge here observed that, quote, any reasonable interpretation is that it is a load vehicle without any innocent purpose. We cited that at, in our brief and it's excerpts of record one, page 16. There is no and can be no innocent, no reasonable innocent explanation for the circumstances in this case traveling- Well, Mr. Casper, isn't your argument for the government similar to the Esquivel Ortega argument of the must have known and certainly wasn't enough to sustain the convictions in that case? Well, your honor, in that case, the cocaine was not detected by a narcotic detector dog. It was contained, in fact, in a bumper compartment of the vehicle. It was not a case that, in, in which circumstances were such as this where the vehicle traveled plainly through roadless sand dunes. It's a vehicle traveling on the road with a passenger who, there was a conceivable innocent explanation. In this case, we have, we at trial demonstrated that the, the so-called innocent explanation provided by the defense was, in fact, mere speculation and that there was not sufficient evidence to allow, that there was sufficient evidence to allow a reasonable jury to conclude beyond a reasonable doubt that the theory suggested by the government that this was a joint venture was, in fact, the correct one. So on that basis, this court can and should distinguish Esquivel Ortega, just as it should distinguish the other cases, including, for example, the Thomas case, which was cited, which involved a non-factory compartment, again, discovered at the port of entry. So each of those cases in which this court has found mere presence wasn't sufficient is distinguishable on the facts, is distinguishable based on, on the facts in this case. To correct, or to correct and follow up on one thing that the appellant argued, which was that there was drug smuggling in the area, the testimony of the agent at trial was that, yes, that there, that drug smuggling was prevalent in the area, but with respect to alien smuggling, which is what appellant argued, the alien smuggling by that time had been stopped, essentially, because there had precluded and suspended the alien traffic on the dunes. In addition, the crossing here was in the middle of the afternoon. The testimony was that to the extent there previously had been alien smuggling traffic, that traffic had been at night when it was cooler and easier to travel. And again, we have traveling through the sand dunes in the, in the middle of the day, an individual with no water, no supplies in the vehicle. Which case is most helpful to your position? Your Honor, I would suggest that the Court look to McGowan-Jimenez, in which the Court found that a rational trier could conclude that the defendant knew about, possessed, and intended to distribute cocaine, and found that it was highly unlikely in that case that the defendant would be sitting with a 10-pound box of cocaine at his feet if he was merely tagging along, or was there for some purely innocuous reason. Like that case here, we have circumstances which are beyond credulity, that this individual would simply have hopped in this vehicle with 500 pounds of marijuana that he's literally sitting on. What about Valles Valencia? And I'm sorry, Your Honor, in regard to what aspect of the cases? Do you think that case is helpful to you? If you, you don't need to, you're on overtime. If you aren't, if it's not immediately at your fingertips, don't concern yourself. Thanks very much. Mr. Lemon, you've got about three minutes and change left. First of all, just briefly with respect to a couple of authorities that Your Honor's inquired about and the counsel cited, Maguillon Jimenez, the defendant in that case, the passenger, was found by discord, at least in its statement of facts, to have had direct possession of the cocaine, and the logical inference was that he had moved the box of cocaine, which was he had taken it from someplace else in the vehicle and put it between his feet. Here, Mr. Moites Pineda did not have any drugs on his person, and again, we're not, this is an SUV, so there was no trunk per se, but it was at the back of the SUV where the marijuana was stacked. He was not within arm's reach. It wasn't something that he had direct control over or could have had direct control over. With respect to the VIA... What do we make of the quantity of the load? This is not something that one person could lift. It's 500 pounds? Isn't that another fact that permits us to draw an inference that these guys were in it together? Well, Your Honor, there's a struggling organization at work here. There were other vehicles that were spotted by the agents. There were people on ATVs. There's no question that this was a smuggling organization, but that doesn't, again, directly implicate Mr. Moites Pineda. Well, but it also has marks of being a load vehicle, in that the windows are darkened, that the whole vehicle is modified in a way to carry 500 pounds, everything, and if it's a load vehicle, like it's, I think it was, like it's a certainly gives indications of, you know, an aiding and abetting or, you know, kind of a joint operation. So, definitely, it was undeniably a load vehicle, but again, I hesitate to go down this road because it isn't Mr. Moites' burden to present hypothetical explanations of innocence, but as long as we're doing that, again, the agent testified, I want to be very clear about this, he testified that when he saw the vehicle, he recognized it as a load vehicle and suspected drug smuggling, alien smuggling, or both. That's what he wrote in his report. He started to waffle a little bit on cross-examination on that point. I impeached him with his report. Those are word for word, what he put in his report. Narcotic smuggling, alien smuggling, or both. And so, it is conceivable that this was not necessarily a drug smuggling venture with respect to Mr. Moites Pineda. And again, that's not our burden, but if the court's troubled by possible innocent explanations, that is one. An additional one is that, again, the government tried to clean it up on pre-direct, but the agent testified that he personally had apprehended hundreds of people who had illegally entered the United States in that area. And of course, Mr. Moites, in his post-court statement, he did not come into evidence stating that he was a drug smuggler in the United States. One other thing that I wanted to address was this idea that no reasonable smuggler would bring a witness. That applies with equal force to Sanchez Mata. It applies with equal force to Ramirez and also to the Thomas case. And I think I'm citing that correctly. From 1972, where you have people who are passengers, and this court has repeatedly held that absent evidence of dominion and control, the Rule 29 should have been granted. And again, with respect to that Thomas case, there was a follow vehicle, which was involved in the importation, or at least the agents believed that to be the case. There were matching walkie-talkies. There was one in the follow vehicle and one in the vehicle that Mr. Thomas was in, and the vehicle also had an overwhelming odor of marijuana in that case. So I think that this court's precedent is clear and requires the conviction to be reversed. Thanks, Mr. Luman. Mr. Kaffner, thank you. The case just argued is submitted. Good morning.
judges: Silverman, Callahan, Mills